UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

STEADFAST INSURANCE COMPANY, a Delaware corporation; and AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, a New York corporation,

       Plaintiffs,

  v.                      NO. CIV. S-05-0632 FCD JFM

                            <u>MEMORANDUM AND ORDER</u>

JAMES DOBBAS, an individual; PAMELA DOBBAS, an individual; DONALD DOBBAS, an individual; PETER MANCINI and LISA MANCINI, husband and wife; PETER MANCINI, as Special Administrator of the ESTATE OF CLAUDETTE MANCINI, deceased; LISA MANCINI , as the Guardian Ad Litem for NASYA MANCINI, a minor; FALLON TURNER, an individual; MERRICK TURNER, an individual,

       Defendants.
_____/

AND RELATED COUNTER-CLAIMS
_____/

----oo0oo----

1

This matter is before the court on motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure,[1] filed by plaintiffs and counterdefendants Steadfast Insurance Company ("Steadfast") and American Guarantee and Liability Insurance ("American").[2] Defendants and countercomplainants, Peter Mancini, Lisa Mancini, Nasya Mancini (collectively, "Mancini defendants"), Fallon Turner, and Merrick Turner (collectively, "Turner defendants") oppose the motion.[3] For the reasons set forth below, plaintiffs' motion is DENIED.

## BACKGROUND[4]

This claim arises out of a dispute regarding insurance coverage. The facts giving rise to the claims made by the Turner and Mancini defendants involve a bodily injury/wrongful death lawsuit following a collision of the Turner vehicle with an Angus bull and a subsequent collision of the Turner vehicle with the Mancini vehicle. (SUF ¶¶ 23-24). The collisions occurred on May

---

[1] All further references to the "Rules" are to the Federal Rules of Civil Procedure, unless otherwise noted.

[2] Plaintiffs/Counterdefendants will be designated collectively as "plaintiffs."

[3] Defendants James Dobbas, Pamela Dobbas, and Donald Dobbas are not counterclaimants, and have not filed a response to plaintiffs' motion for summary judgment.

[4] Unless otherwise noted, the facts recited herein are undisputed. See Turner Defs.' Response to Pls.' Stmt. of Undisputed Facts, filed Nov. 21, 2005; Fallon Defs.' Response to Pls.' Stmt. of Undisputed Facts, filed Nov. 21, 2005. The Turner defendants' and Mancini defendants responsive filing are identical. Therefore, the court will refer to these documents collectively as Defs.' Response to Pls.' Stmt. of Undisputed Facts ("SUF"). Where the facts are in dispute, the court recounts defendants' version of the facts. See Turner Defs.' Stmt. Of Disputed Facts, filed November 21, 2005 ("SDF").

1  27, 2002.  (Id. ¶ 22).  The Angus bull belonged to James Dobbas
2  ("Dobbas") and had escaped from the pasture owned by Milton
3  Holstrom ("Holstrom").  (Id. ¶ 22-23).  The collisions involved
4  two fatalities, and four of the vehicles' occupants were injured.
5  (Id. ¶ 25).
6      The Turner defendants and Mancini defendants filed
7  complaints against Dobbas, Holstrom, and others in separate
8  actions.  (Id. ¶¶ 26-28).  However, they later consolidated their
9  cases in the United States District Court for the District of
10 Nevada.  (Id. ¶¶ 29-31).  Dobbas and Holstrom tendered defense of
11 the claim to CalFarm.  (Pls.' Stmt. of Undisputed Facts ("UF"),
12 filed Oct. 31, 2005, ¶ 32).  The parties to the claim
13 subsequently participated in a mediation, and Dobbas' insurance
14 carrier offered the one million dollar limit of the policy as
15 part of the settlement.  (SUF ¶ 35).  The Turner and Mancini
16 defendants eventually accepted the one million dollar settlement,
17 which also included a binding arbitration to determine the issue
18 of Dobbas' liability and to apportion the recovery between the
19 Turners and the Mancinis.  (Id. ¶ 41).  The parties agreed prior
20 to arbitration that the arbitration would be binding, with no
21 right of appeal, and that the Mancinis and Turners would execute
22 a Covenant Never to Execute against Dobbas' personal assets.
23 (Id. ¶¶ 42-43).  The parties further agreed that Dobbas would
24 turn over his rights, title, and interest, in a cause of actions
25 against Fred Vitas ("Vitas") and Vitas Insurance Agency ("VIA")
26 for negligence and breach of contract to the Turners and the
27 Mancinis.  The binding arbitration was also to serve the purpose
28 of giving legal effect to the claims so that the Mancinis and

1  Turners could pursue the action against Vitas and VIA.
2       The arbitration was held on February 25, 2004.  (SUF ¶¶ 49,
3  52).  The Mancinis and Turners presented six live witnesses, one
4  witness by deposition testimony, and 27 exhibits.  (Id. ¶¶ 52-
5  53).  They also presented expert testimony.  (Id. ¶ 54).  Dobbas
6  presented two witnesses.  (Id. ¶ 55).  In March 2004, the
7  arbitrator issued a five million dollar award against Dobbas –
8  three million in favor of the Turners and two million in favor of
9  the Mancinis.  (Id. ¶ 56).
10      On May 7, 2004, counsel for Dobbas wrote to counsel for the
11 Turners and counsel for the Mancinis, informing them that two
12 additional insurance policies were located of which all parties
13 were previously unaware.  (Id. ¶ 59).  The two policies were
14 issued by plaintiffs Steadfast and American.  (Id.)  In May 2004,
15 plaintiffs first received notice of the 2002 collision through
16 service of a cross-claim filed by Cal-Farm in a related action
17 brought by James and Pamela Dobbas against Vitas and VIA in May
18 2003.  (Id. ¶¶ 60-63).  Steadfast acknowledged receipt of the
19 claims and reserved all rights by a letter dated May 14, 2004.
20 (Id. ¶ 64).  On March 30, 2005, plaintiffs filed a complaint in
21 this court, seeking declaratory and equitable relief against all
22 defendants.
23      On October 31, 2005, plaintiffs filed a motion for summary
24 judgment, or in that alternative, summary adjudication, on the
25 issue of notice.  Plaintiffs contend that they are entitled to
26 summary judgment because they were prejudiced by Dobbas' failure
27 to give notice of the claim, and therefore, their policy
28 obligations to defendants are now completely excused.

4

**STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of the rule is to dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. See Celotex, 477 U.S. at 323-24. If the moving party does not bear the burden of proof at trial, he or she may discharge his burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325. Once the moving party meets the requirements of Rule 56 by showing there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Genuine factual issues must exist that "can be resolved only by a finder of fact, because they may

reasonably be resolved in favor of either party." Id. at 250. In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. See T.W. Elec. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. See Falls Riverway Realty, Inc. v. City of Niagara Falls, 754 F.2d 49, 57 (2d Cir. 1985); Thornhill Publ'g Co., Inc. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979).

## ANALYSIS

Plaintiffs contend that they owe defendants no obligations under the insurance policies at issue because James Dobbas failed to give plaintiffs timely notice as required under the policy. Both the Steadfast and American policies require that the insured must ensure that the insurer is notified promptly of an occurrence or offense which may result in damages covered by the policy. (SUF ¶¶ 6, 12). Both policies also state that there will be no right of action against the insurer if the insured does not comply with all conditions of the policy. (Id. ¶¶ 7, 13).

The law is well settled in California that "breach by an insured of a . . . notice clause may not be asserted by an insurer unless the insurer was substantially prejudiced thereby." Northwestern Title Sec. Co. v. Flack, 6 Cal. App. 3d 134, 141

1  (1970); see Shell Oil Co. v. Winterthur Swiss Ins. Co., 12 Cal.
2  App. 4th 715, 760-61 (1993).  Prejudice is ordinarily a question
3  of fact.  Northwestern Title Sec. Co., 6 Cal. App. 3d at 141.
4  Prejudice does not exist as a matter of law merely from the fact
5  of delay alone nor can any presumption or inference of prejudice
6  be drawn from the mere fact of delay.  Id.  The burden of proving
7  prejudicial breach is on the insurer, and the insurer must show
8  actual prejudice, not the mere possibility of prejudice, in order
9  to meet its burden.  Id.  The insurer "must establish at the very
10 least that if the [] clause had not been breached there was a
11 substantial likelihood the trier of fact would have found in the
12 insured's favor."  Billington v. Interinsurance Exch. Of S. Cal.,
13 71 Cal. 2d 728, 737 (1969).  The California Supreme Court has
14 explained that under the notice-prejudice rule, "prejudice is not
15 shown by displaying end results; the probability that such
16 results could or would have been avoided absent the claimed
17 default or error must also be explored."  Clemmer v. Hartford
18 Ins. Co., 22 Cal 3d. 865, 883 n.12 (1978).

19      Plaintiffs present evidence that they would have taken five
20 steps to protect their rights and the rights of the insured: (1)
21 they would have accepted the tender subject to a reservation of
22 rights pending the resolution of the claim (SUF ¶ 71)[5]; (2) they
23 would have requested that Dobbas seek allocation of fault and/or
24 a cross claim against Holstrom (Id. ¶ 73); (3) they would not
25 have agreed to binding arbitration and would have preserved the

---

[5] Defendants object to plaintiffs' evidence regarding these steps as "speculation as to what the moving parties 'would have done.'"  It is not necessary for the court to rule on the admissibility of such evidence for purposes of this motion.

7

right to appeal (Id. ¶ 74); (4) they would have requested that the Insured present expert witness testimony to rebut the opinions of the Turner's and Mancini's expert' (SUF ¶ 78); and (5) they would they would have been sought a negotiated settlement for much less than five million dollars.  (SUF ¶ 82).

However, while plaintiffs present evidence of what they would have done if they had notice of the claim, plaintiffs do *not* present evidence that, if these steps had been taken, it was substantially likely that the arbitrator would have found for the insured.  Nor do plaintiffs present evidence that the matter would have settled for considerably less than five million dollars if they had been informed earlier.  Plaintiffs bear the burden of presenting evidence of actual prejudice due to the lack of notice.  Northwestern Title Sec. Co., 6 Cal. App. 3d at 141. Plaintiffs have presented no evidence that the result of the underlying insurance dispute would have differed, either through a different result reached on the merits by the arbitrator or through a lesser settlement amount, if plaintiffs had (1) accepted tender; (2) requested that Dobbas seek allocation of fault or file a cross-claim; (3) not agreed to binding arbitration; (4) presented expert testimony;[6] or (5) sought settlement for less that five million dollars.  Rather, plaintiffs seek the court to infer actual prejudice from the circumstances of the case, specifically from the agreement by the insured to enter into binding arbitration without giving the insurers notice or opportunity to defend.

---

[6] Defendants present evidence that Dobbas did present expert testimony at the arbitration.

8

1    These circumstances demonstrate a possibility of prejudice
2 to the plaintiffs.  However, the court cannot infer prejudice
3 from a negative end result.  See Clemmer, 22 Cal 3d. at 883 n.12.
4 Nor can the court infer actual prejudice from the speculation of
5 plaintiffs that the results of the arbitration or a potential
6 settlement would have been different if they had taken the steps
7 proffered by plaintiffs.  There is no evidence of actual
8 prejudice to plaintiffs.  Because plaintiffs have failed to meet
9 the requirements of Rule 56 by presenting evidence of prejudice,
10 the burden does not shift to the defendants to present evidence
11 to the contrary.  See Celotex, 477 U.S. at 325.  Thus, the court
12 cannot find that plaintiffs were prejudiced as a matter of law.
13 Therefore, summary judgment cannot be granted.
14    Plaintiffs attempt to overcome their evidentiary
15 shortcomings by citing cases, none of which support their
16 argument.  For example, plaintiffs point to Select Insurance Co.
17 v. Superior Court of San Diego County to support the proposition
18 that an insurer may meet its burden of establishing prejudice by
19 showing that the insurer was deprived of the opportunity to
20 accept tender of defense, reserve its right to dispute coverage,
21 and then settle with the third party claimant without giving up
22 the right to pursue its insured for the amount paid in
23 settlement.  226 Cal. App. 3d 631, 638 (1990).  However, Select
24 Ins. Co. does not stand for such a proposition.  The court in
25 Select Ins. Co. held that a trial court's grant of summary
26 judgment against the insurer was improper under such
27 circumstances because they created an issue for adjudication
28 regarding the insurer's notice defense.  Id. at 639.  The

9

circumstances analyzed by the court showed the possibility of prejudice, but did not demonstrate actual prejudice.[7]

Plaintiffs also rely on the court's grant of summary judgment to the insurer in Earle v. State Farm Fire & Cas. Co., 935 F. Supp. 1076, 1081-81 (N.D. Cal. 1996) and in Fireman's Fund Ins. Co. v. Nat'l Bank for Cooperatives, 849 F. Supp. 1347, 1366-68 (N.D. Cal. 1994). These cases are distinguishable from plaintiffs' case.

In Earle, the insurer presented evidence that if notice had been given earlier, the insured's exposure, as well as its own, would have been substantially reduced because (1) it would have paid its own attorneys an hourly rate lower than that paid to insured's independent counsel; (2) it would have been allowed to seek reimbursement of fees and costs; and (3) it would have submitted a special interrogatory to the jury which was substantially likely to relieve it of the obligation to pay the judgment. 935 F. Supp. at 1082. Conversely, plaintiffs have not offered evidence of such concrete monetary losses or of a substantial likelihood of a different underlying result in their case.

Further, in deciding the issue of prejudice as a matter of law, the court in Earle focused on the fact that the insured was aware of the potential for coverage, but did not contact the

---

[7] Plaintiffs similarly misinterpret the case of Sequoia Insurance Co. V. Royal Ins. Co. of Am., 971 F.2d 1385, 1394 (9th Cir. 1992). The Ninth Circuit held that the trial court's grant of summary judgment against the insured was improper because a factual issue remained regarding whether actual prejudice was suffered. Id. As in Select Ins. Co., the circumstances analyzed by the court demonstrated a possibility of prejudice, but not actual prejudice.

10

insurer until after trial. Id. at 1081 (citing Felice v. St. Paul Fire & Marine Ins. Co., 42 Wash. App. 352 (1985)). In plaintiffs' case, the May 7, 2004 letter from Dobbas' counsel indicates that all parties were previously unaware of the potential coverage by plaintiffs' policies. (SUF ¶ 59). Assuming that this letter is inadmissible hearsay as defendants contend, plaintiffs have still not presented evidence that defendants were aware of the potential coverage. Therefore, the facts of plaintiffs' case does not demonstrate the type of intentional or knowing failure by the insured to notify the insurer that the court focused on in Earle.

In Fireman's Fund, the court granted summary judgment to the insured where notice was given to the insurer long after the arbitration award was issued. 849 F. Supp. at 1368. However, the actual prejudice to the insurer in Fireman's Fund was clear because no one defended in the arbitration proceeding. Id. Plaintiffs attempt to draw an analogy to the present case by contending that Dobbas failed to resolutely defend because the Mancinis and Turners had previously agreed never to execute against Dobbas' personal assets and because the Mancinis and Turners had accepted the one million dollar settlement offer from the defending insurer. However, aside from their assumptions from the circumstances of the arbitration, plaintiffs present no evidence of Dobbas' failure to diligently litigate the claim. Further, defendants present evidence that Dobbas "hotly contested liability" at the arbitration and that both sides "vigorously argued" the issue of liability. (SDF ¶ 65). Therefore, unlike Fireman's Fund, this case does not present the type of clear

11

evidence of actual prejudice to the insurer due to a complete failure to defend at arbitration.

Because plaintiffs have failed to meet their burden of showing actual prejudice as a result of the delay in notice, plaintiffs' motion for summary judgment is DENIED.

IT IS SO ORDERED.

DATED: January 11, 2006.

>/s/ Frank C. Damrell Jr.
FRANK C. DAMRELL, Jr.
UNITED STATES DISTRICT JUDGE